UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PACIFIC BIOSCIENCE LABORATORIES, INC.,

Plaintiff,

v.

PRETIKA CORPORATION,

Defendant.

CASE NO. C10-0231JLR

ORDER GRANTING MOTION TO STAY

## I. INTRODUCTION

This matter is before the court on Defendant Pretika Corporation's ("Pretika") motion to stay this litigation pending the *ex parte* reexamination of numerous claims of United States Patent No. 7,320,691 ("the '691 patent") by the United States Patent and Trademark Office ("USPTO"). (Mot. (Dkt. # 29) & Praecipe (Dkt. # 31).) The court has considered Pretika's motion, all submissions filed in support and opposition to the motion, as well as the pleadings on file. The court also heard the argument of counsel on

January 7, 2011. For the reasons stated below, the court GRANTS Pretika's motion for a stay (Dkt. # 29).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a patent infringement case. Plaintiff Pacific Bioscience Laboratories, Inc. ("PBL") develops and markets sonic facial brush devices under its Clarisonic line of products. (Resp. (Dkt. # 34) at 2). Pretika markets and sells an allegedly competing device known as the SonicDermabrasion Facial Brush. (*See* Mot. at 2.) PBL alleges that Pretika's SonicDermabrasion Facial Brush infringes its '691 patent. (Compl. (Dkt. # 1) at ¶¶ 14-23.)

The application that ultimately issued as the '691 patent was filed on January 15, 2003. (Mot. at 3.) In December 2006, PBL asserts that it formally notified Pretika that PBL owned several utility patent applications having claims that read on the Pretika SonicDermabrasion device. (Resp. at 4.) On January 22, 2008, the USPTO issued the '691 patent, which has been assigned to PBL. (Compl. at ¶ 11.) However, it was not until February 8, 2010, more than three years following PBL's first notification to Pretika of alleged infringing activity, and nearly two years following the issuance of the '691 patent, that PBL filed suit for patent infringement against Pretika. (*See* Compl.) PBL did not serve its complaint on Pretika until March 12, 2010. (Affid. of Serv. (Dkt. # 7).)

Pretika sought reexamination of the '691 patent on May 14, 2010 (approximately two months following service of the complaint), and again on June 25, 2010. (*See* Resp. at 7, n.1 & n.2.) However, in both of these instances, Pretika's submissions were rejected

by the USPTO because they did not comply with certain requirements.[1] (*Id.*) Nevertheless, Pretika promptly amended its submissions, and in August 2010, submitted a facially complete reexamination request to the USPTO. (Resp. at 7.) On September 30, 2010, the USPTO granted Pretika's request for *ex parte* reexamination of the '691 patent. (Mot. at 1; USPTO Order (Dkt. # 28-1).) One week later, on October 7, 2010, Pretika filed its present motion seeking a stay of these proceedings.

In its order granting Pretika's reexamination request, the USPTO found that prior art that had never been cited to or considered by the USPTO during the prosecution of the original patent application at issue here raised "[a] substantial new question of patentability." (*See* USPTO Order at 4.) The reexamination order encompasses all of the claims of the '691 patent that PBL asserts against Pretika in this litigation. (*Id.*; Mot. at 1.)

The parties have engaged in some, but not extensive discovery. Both sides have served and answered interrogatories and requests for production. (Resp. at 5.) Pretika propounded only nine discovery requests. (Reply (Dkt. # 39) at 5.) Both sides have exchanged invalidity and infringement contentions, as well as claim terms for construction during the *Markman* hearing. (Resp. at 5.) Pretika's invalidity contentions include the same allegations set forth in the reexamination requests. (Reply at 5.) Pretika also issued two third-party subpoenas related to the prior art identified in the

---

[1] Pretika followed both of these submissions to the USPTO with corresponding motions to stay these proceedings, but withdrew the motions when the USPTO rejected its submissions. (*See* Resp. at 7, n.1 & n.2; Mots. to Stay (Dkt. ## 12 & 18); Withdrawals (Dkt. ## 17 & 21).)

reexamination request, as well as to Pretika's investigation of possible inequitable conduct on the part of PBL. (Reply at 5.) No party has scheduled any depositions. (*Id.*) The *Markman* hearing has not yet been conducted, and no briefing related to the hearing has been filed. The trial is not set to commence until November 14, 2011. (*See* Sched. Order (Dkt. # 23).)

## III. ANALYSIS

A district court has the discretion to stay judicial proceedings pending reexamination of a patent by the USPTO. *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In determining whether to grant a stay pending reexamination, the court considers: (1) whether a stay will simplify the issues in question and the trial of the case, (2) whether discovery is complete and whether a trial date has already been set, and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Wre-Hol, LLC v. Pharos Science & Applications*, No. C09-1642 MJP, 2010 WL 2985685, at *2 (W.D. Wash. July 23, 2010).

### A. Simplification of the Issues

Pretika asserts that, based on the strength of the prior art, there exists a high likelihood that the USPTO will cancel or significantly amend the claims at issue in the '691 patent. (*See* Mot. at 9.) Pretika also cites statistics published by the USPTO which demonstrate that in over 75% of cases in which reexamination requests are granted, claims are either changed or cancelled. (*Id.* (citing Scott Decl. (Dkt. # 30) Ex. 13.) Pretika argues that because it is likely that at least some of the claims at issue here will be

cancelled or amended, the simplification factor weighs in favor of a stay. In response, PBL asserts that to satisfy this factor the outcome of a reexamination must finally resolve all issues in the litigation. (Resp. at 9.) Therefore, in PBL's view, a stay is not warranted because "[t]here is a nearly one-in-four chance that all of the claims of the '691 patent will emerge from reexamination unchanged," and an only 12% chance that all of the claims will be cancelled. (*Id.* (citing Harlow Decl. (Dkt. # 36) Ex. H).)

First, the court rejects PBL's assertion that satisfaction of the simplification factor requires the elimination of all issues in the litigation.[2] If PBL's position were correct, then based on the statistics PBL cites, this factor could never be satisfied, and that reality is not reflected in the case law. Stays have been granted in numerous cases where reexamination would likely simplify, but not eliminate, all issues in the litigation. *See e.g. Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. C08-184JLR, 2009 WL 357902, at *2 (W.D. Wash. Feb. 9, 2009) ("Based solely on the statistics, [Plaintiff] is right that there is a low likelihood that all claims will be cancelled; however, it ignores the greater than 50% chance that there will be some claim modification."); *Brass Smith, LLC v. Advanced Design Mfg. LLC,* No. CV 10-4945 PSG (FFMx), 2010 WL 5363808,

---

[2] In support of its position, BPL cites *Yodlee, Inc. v. Ablaise Ltd*, No. C-06-07222 SBA, 2009 WL 112857, at *4 (N.D. Cal. Jan. 16, 2009). (Resp. at 9.) The court first notes that California federal district court authority is not binding here. Further, cases relying on *Yodlee* or similar authority have been distinguished on grounds that they involve claims unrelated to patent infringement that would need to be tried regardless of the USPTO's reexamination decision or because the USPTO had previously confirmed the majority of claims at issue. *See Network Appliance, Inc. v. Sun Microsystems, Inc.*, No. C-07-06053 EDL, 2010 WL 545855, at *3 (N.D. Cal. Feb. 11, 2010). These circumstances are not present here. However, to the extent *Yodlee* stands for the broad proposition advocated by PBL, the court finds that it is not within the mainstream of federal authority which looks to a mere simplification of the case and not to final resolution of all issues. *See infra* § III. A. at 6 (citing cases).

at *1 (C.D. Cal. Dec. 20, 2010) ("Cancellation of some . . . of the claims would obviously streamline . . . the litigation."); *Interplast Group, Ltd. v. Coroplast, Inc.*, No. 4:08-CV-1413 CAS, 2009 WL 1774313, at *2 (E.D. Mo. June 23, 2009) ("The Court believes that a stay will simplify the issues and facilitate trial of the case, even though not all of the issues raised in [the defendant's] counterclaims can be raised in the reexamination process."); *Constellation IP, LLC v. The Allstate Corp.*, No. 5:07-CV-132 (LED), 2008 WL 4787625, at *3 (E.D. Tex. May 12, 2008) ("As noted by the Federal Circuit, reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation.") (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983)).

Because there is a greater than 75% chance that some of the claims will emerge from reexamination either changed or cancelled (*see* Mot. at 9 (citing Scott Decl. Ex. 13)), and because all of the claims of the '691 patent at issue in this litigation are subject to the USPTO's reexamination (Mot. at 1), it is likely that at least some of the claims will be altered or cancelled. If the court were to allow the case to proceed, there is a substantial risk that both the court and the parties will needlessly expend valuable resources in determining the validity of patent claims that are ultimately cancelled or amended by the USPTO. *See Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. C08-184JLR, 2009 WL 357902, at * 2 (W.D. Wash. Feb. 9, 2009); *Aten Int'l Co., Ltd. V. Emine Tech. Co., Ltd.*, No. SACV09-0843, 2010 WL 1462110, at *7 (C.D. Cal. Apr. 12, 2010) ("Because [the vast majority] of patents being reexamined change in some way . . . the Court risks enabling futile litigation that may have to be repeated if the patent

changes.”). Even if some or all of the claims are confirmed, the court would still have the benefit of the USPTO’s analysis of the disputed claim terms in ruling on claim construction. *See SKF Condition Monitoring, Inc. v. SAT Corp.*, 2008 WL 706851, at *7 (S.D. Cal. Feb. 27, 2008) (the USPTO’s “expert evaluation” and “understanding of the claims” is “also likely to aid this Court in the preliminary process of claim construction”). The reexamination will have a significant impact on the issues in this case, regardless of outcome, and thus the court finds that this factor weighs in favor of granting the stay.

PBL’s assertion that Pretika intends to move to amend its answer to add counterclaims, including one for inequitable conduct, does not change the court’s analysis here. First, the court notes that no such motion is presently pending. However, even if Pretika were to seek to add such counterclaims, reexamination is still likely to narrow the issues or result in useful analysis for the court with regard to claim construction. The patent claims at issue in this case could be confirmed, limited, or cancelled during reexamination. As a result, depending on the outcome, Pretika may reevaluate its need for certain counterclaims. (Reply at 4-5.) In short, because there is no present counterclaim for inequitable conduct, and because it is uncertain that one will ever be alleged, the court does not find that this issue outweighs the benefits of potentially simplifying the patent issues in this case, and obtaining the benefit of the PTO’s analysis, that will be gained if a stay is entered.

Finally, PBL asserts that a stay would not simplify the issues because if the *ex parte* reexamination confirms the ‘691 patent claims, Pretika will still be allowed to raise the same patent invalidity arguments again in this litigation – obtaining a proverbial

second bite of the apple. (Resp. at 10.) PBL is correct in this regard.[3] Nevertheless, although the ability to litigate patent invalidity once the stay is lifted does reduce the potential for simplification, the benefits of simplification still accrue for any claims that the USPTO cancels or amends, *Heraeus Electro-Nite Co. v. Vesuvius USA Corp.*, No. 09-2417, 2010 WL 181375, at * 2 (E.D. Pa. Jan. 11, 2010), and PBL ignores the statistics that significantly favor this outcome with regard to at least some of the claims. Further, the cancellation or amendment of some of the claims may also alter or have a simplifying effect on Pretika's invalidity assertions based on prior art. *See e.g. Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 1:10 CV 1370, 2010 WL 4699870, at *4 (N.D. Ohio Nov. 12, 2010). Finally, regardless of the outcome of the reexamination, the court will nevertheless have the benefit of the USPTO's expertise, analysis of the '691 patent claims, and evaluation of the relevant prior art. *See Ethicon*, 849 F.2d at 1428; *see also Gould*, 705 F.2d at 1342. Indeed, the patent reexamination procedure was intended to

---

[3] In an *inter partes* proceeding, a third-party that requests reexamination can file written comments with the USPTO addressing the patent owner's arguments. 35 U.S.C. § 314(b)(2); *see also Wabco Holdings, Inc. v. Bendix Commercial Vehicle Systems, LLC*, No. 09-3179 (DMC), 2010 WL 2628335, at *2 (D.N.J. June 28, 2010). As a result, the third-party in an *inter partes* proceeding is estopped from asserting, in a later civil action, the invalidity of any of the claims that the USPTO deems valid. 35 U.S.C. § 315(c). However, in an *ex parte* proceeding a third party is not allowed to present its side of the case; only the patent holder is involved in the proceeding. *Wabco Holdings*, 2010 WL 2628335, at *2; *see* 35 U.S.C. § 305. Therefore, a defendant is not estopped from challenging patent validity in a future civil action following an *ex parte* reexamination. *Wabco Holdings*, 2010 WL 2628335, at *2. "If Congress had thought that a third-party requester in an *ex parte* reexamination would receive two bites of the apple by being allowed to assert invalidity arguments in a later patent infringement suit, then it could have estopped the party in the same way that it does for *inter partes* reexaminations. Congress chose not to." *Wabco Holdings*, 2010 WL 2628335, at *2. Instead, "Congress countenanced a scheme in which a patent's validity may come under attack in both a courtroom and the [US]PTO." *VData, LLC v. Aetna, Inc.*, No. 06-1701 JNE/SRN, 2006 WL 3392889, at *5 (D. Minn. Nov. 21, 2006).

provide federal courts with the benefit of the USPTO's expertise. *Id*. Accordingly, the court finds that, despite the possibility that Pretika may have a "second bite" with regard to some patent invalidity arguments, the simplification factor still weighs in favor of granting a stay.

**B. Stage of Litigation**

Although the parties have engaged in limited written discovery and document production, the court nevertheless finds that the relatively early stage of the litigation also weighs in favor of granting the stay. Discovery is far from complete. Indeed, the parties have not even scheduled, let alone taken, any depositions. The claim construction hearing has not yet taken place, and the parties have not yet submitted claim construction briefs. The trial is not scheduled until mid-November 2011. Neither the parties, nor the court, have invested the kind of resources that would render a stay pending reexamination untenable. To the contrary, the fact that substantial additional discovery, claim construction, and other issues lie ahead in this case weighs in favor of a stay.

**C. Prejudice to the Non-Moving Party**

PBL asserts that it will suffer prejudice due to the length of time it takes for a patent to wind its way through the reexamination process. (Resp. at 8.) There is no doubt that if the stay is granted, delay will result. PBL asserts that, based on the USPTO's own report, it takes an average of more than two years for a patent reexamination to be completed. (*Id.* at 8 (citing Harlow Decl. (Dkt. # 36) Ex. H.) Courts have repeatedly held that the delay inherent in the reexamination process does not, by itself, constitute undue prejudice. *See Implicit Networks*, 2009 WL 357902, at *3 (citing

cases). In any event, the USPTO order stated that the reexamination "will be conducted with special dispatch." (Mot. at 10 (citing Scott Decl., Ex. 12 at 2); *see also* USPTO Order (Dkt. # 28-1) at 2.) "[T]he [US]PTO has interpreted special dispatch to require that 'reexamination proceedings will be "special" throughout their pendency' in the office, and provides for an accelerated schedule." *Ethicon*, 849 F.2d at 1426 (citing MPEP § 2261). Moreover, USPTO rules require that reexamination of patents involved in litigation "will have priority over all other cases." (Mot. at 10 (citing MPEP § 2261).) In addition, if the present litigation is stayed pending reexamination, the USPTO will further expedite the procedure. *See Roblor Mktg. Group, Inc. v. GPS Indus., Inc.*, 633 F. Supp. 2d 1341, 1348 (S.D. Fla. 2008) (citing MPEP § 2261 and MPEP § 2686.04). Thus, it does not appear that the average length of time for reexamination, relied upon by PBL as evidence of prejudice, is necessarily applicable here.

PBL asserts that because Pretika is its direct competitor in the market place, a stay is more likely to unduly prejudice PBL. (*Id.* at 6.) PBL argues that Pretika is not only infringing on its patent, but simultaneously undercutting PBL's prices, creating a serious threat of both lost market share and price erosion that is not fully remediable with money damages. (*Id.* at 6-7.) PBL's assertion that it will be prejudiced with further loss of market share and price erosion by the delay engendered by a stay is contradicted by its own delay in pursuing its infringement claim. PBL admits that it first notified Pretika, in December 2006, of potentially infringing activity based on the patent application that eventually issued as the '691 patent, and that the USPTO issued the '691 patent on January 22, 2008. (*See* Resp. at 4.) Nevertheless, it was not until February 8, 2010 that

PBL filed its patent infringement complaint, and not until March 12, 2010 that PBL served that complaint on Pretika. Thus, PBL waited more than three years following its initial formal notification to Pretika, and more than two years following issuance of the '691 patent, before initiating its infringement suit against Pretika. PBL's prior lack of urgency in this matter belies its insistence that the litigation move forward with all dispatch now. *See e.g. O'Keefe's, Inc. v. Tech. Glass Prods.*, No. C 07-03535 JF, 2007 WL 4105976, at *2 (N.D. Cal. Nov. 16, 2007) (rejecting possible prejudice argument in part because plaintiff had already waited more than a year since the issuance of its patent to commence its infringement action). Further, PBL has not sought any form of preliminary injunctive relief in this action, which further undermines its position and suggests that a stay would not be unduly prejudicial. *See Insituform Techs., Inc. v. Liqui-Force Servs. (USA), Inc.*, No. 08-11916, 2009 WL 1469660, at *2 (E.D. Mich. May 26, 2009) (plaintiff's failure to move for temporary restraining order or preliminary injunction was a factor in court's finding that a stay pending patent reexamination would not be unduly prejudicial) (citing cases)).

Finally, the court also rejects PBL's assertions that Pretika delayed in filing its request for reexamination as a dilatory tactic in this litigation, or to gain a strategic advantage. Pretika was not served with this lawsuit until March 12, 2010. It filed its first application for reexamination in on May 14, 2010, and its second on June 25, 2010. Pretika also filed motions for a stay following each of these applications, but withdrew those motions when later notified by the USPTO that its applications for reexamination were not in compliance. Pretika filed a compliant application in August 2010, and filed

the present motion for a stay on October 7, 2010 – just one week after learning that the USPTO had granted its application for *ex parte* reexamination of the ‘691 patent. While the defective nature of Pretika’s first two reexamination applications is unfortunate, the court does not find Pretika’s efforts to be dilatory in nature or designed to gain a strategic advantage over PBL. Thus, the court finds that PBL is not likely to suffer any undue prejudice if the court were to enter a stay pending the outcome of the reexamination.

## IV. CONCLUSION

Based on the foregoing, the court GRANTS Pretika’s motion for a stay of these proceedings pending reexamination of the ‘691 patent (Dkt. # 29). It is hereby ORDERED: (1) all proceedings in this action are STAYED until ordered otherwise; and (2) within six months of the date of this order or within twenty days following the conclusion of the USPTO reexamination of the ‘691 patent, whichever is sooner, the parties shall file a joint status report describing the status of the case, and if warranted, requesting that the court lift the stay.

Dated this 9th day of January, 2011.

JAMES L. ROBART
United States District Judge